

**FILED**

UNITED STATES DISCTRICT COURT     APR **3 0** 2009
EASTERN DISTRICT OF CALIFORNIA

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
           DEPUTY CLERK

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.

FOUNDING PARTNERS CAPITAL
MANAGEMENT, CO.; WILLIAM L.
GUNLICKS; SUN CAPITAL, INC.;
SUN CAPITAL HEALTHCARE, INC.;
FOUNDING PARTNERS STABLE-
VALUE FUND, LP; FOUNDING PARTNERS
STABLE-VALUE FUND II, LP; FOUNDING
PARTNERS GLOBAL FUND, LTD.;
FOUNDING PARTNERS HYBRID-
VALUE FUND, LP,

      Defendants,

Case No. 2:09 mc 0041 mce DAD

---

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

FOUNDING PARTNERS CAPITAL
MANAGEMENT, CO.; WILLIAM L.
GUNLICKS; SUN CAPITAL, INC.;
SUN CAPITAL HEALTHCARE, INC.;
FOUNDING PARTNERS STABLE-
VALUE FUND, LP; FOUNDING PARTNERS
STABLE-VALUE FUND II, LP; FOUNDING
PARTNERS GLOBAL FUND, LTD.;
FOUNDING PARTNERS HYBRID-
VALUE FUND, LP,

      Defendants,

LEYZA F. BLANCO,

      Receiver.

Case No. 2:09-cv-00229-JES-SPC

## NOTICE OF FILING COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF AND ORDER APPOINTING RECEIVER

PLEASE TAKE NOTICE that Leyza F. Blanco, not individually, but solely in her capacity as receiver (the "Receiver") for Founding Partners Capital Management, Co., Founding Partners Stable-Value Fund, LP, Founding Partners Global Fund, Ltd., and Founding Partners Hybrid-Value Fund, LP, (collectively the "Receivership Entities"), hereby files the attached Complaint for Injunctive and Other Relief and Order Appointing Receiver.

Dated: 4/29/09

GRAYROBINSON, P.A.
Attorneys For Leyza F. Blanco, Receiver
1221 Brickell Avenue, Suite 1650
Miami, Florida 33131
Tel: 305-416-6880
Fax: 305-416-6887

By: _____
Frank P. Terzo, Esquire
Florida Bar No.: 906263

# 92904 v1

2



**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

**CASE NO.:**

2: _09_-c_V_-_229_-FtM-29_SPC_

SECURITIES AND EXCHANGE COMMISSION, )
)
           **Plaintiff,** )
)
v. )
)
FOUNDING PARTNERS CAPITAL MANAGEMENT, CO., )
and WILLIAM L. GUNLICKS, )
)
           **Defendants,** )
)
SUN CAPITAL, INC., )
SUN CAPITAL HEALTHCARE, INC., )
FOUNDING PARTNERS STABLE-VALUE FUND, LP, )
FOUNDING PARTNERS STABLE-VALUE FUND II, LP, )
FOUNDING PARNTERS GLOBAL FUND, LTD, and )
FOUNDING PARTNERS HYBRID-VALUE FUND, LP, )
)
           **Relief Defendants.** )
_____)

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission alleges:

## I. INTRODUCTION

1.    The Commission brings this action to permanently enjoin two recidivists –

investment adviser Founding Partners Capital Management Company ("Founding Partners") and

its owner and principal, William L. Gunlicks – from violating the antifraud provisions of the

federal securities laws and a December 2007 Commission cease-and-desist order against them.

The Commission also seeks to protect and preserve approximately $550 million of investor

assets the Defendants have placed at risk.

2.      Founding Partners and Gunlicks operate three hedge funds and one mutual fund that made or invested in loans to two borrowers, Sun Capital, Inc. and Sun Capital Healthcare, Inc. (collectively "Sun Capital"). The Defendants represented to investors that their primary fund, Founding Partners Stable-Value Fund, LP ("Stable-Value"), loaned money to Sun Capital to purchase discounted commercial and healthcare receivables, and that Sun Capital would in turn pay Stable-Value interest on the loan. Founding Partners and Gunlicks represented that Sun Capital was factoring short-term (collected within 150 days), highly liquid receivables, and that these receivables fully secured the loan to Sun Capital.

3.      Unbeknownst to investors, the Defendants, beginning in 2004, permitted Sun Capital to start purchasing receivables that were longer-term, less liquid, and much riskier in nature. Among other things, Sun Capital purchased these new receivables from often troubled hospitals that needed to remain operating in order to collect the receivables. Founding Partners and Gunlicks also permitted Sun Capital to use investor proceeds to make working capital loans to these hospitals so they would remain afloat. In addition, the Defendants allowed Sun Capital to invest in workers compensation receivables that take an average of almost three years to collect.

4.      Founding Partners and Gunlicks continued to solicit investors for Stable-Value without disclosing the change in the underlying investments and new risks they presented. Sun Capital now owes $550 million on the Stable-Value loan, which constitutes 99% of Stable-Value's portfolio. Only 32% of this loan amount, however, is invested in and secured by the less risky, short-term receivables that Founding Partners and Gunlicks described to investors.

5.      Sun Capital has ceased making interest payments on the outstanding loan from Stable Value. All that remains of the money investors placed with Stable-Value is the Sun

2

Capital receivables and any other assets of Sun Capital securing the loan.

6.  The investor assets are at immediate risk of being used to support Sun Capital's working capital requirements and of being diverted directly to Founding Partners and Gunlicks. In addition, Gunlicks is trying to avoid redemption requests he cannot satisfy by convincing investors to exchange their partnership interests in the secured loan held by Stable-Value for other riskier investments.

7.  Through their conduct, the Defendants have violated Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §77o(a), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78j(b), and Rule 10b-5, Sections 206(1), (2), and (4) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6(1), (2), and (4), and Rule 206(4)-8 promulgated thereunder, 17 C.F.R. § 275.206(4)-8, and a prior Commission administrative order.

8.  The Defendants have shown they will continue to violate the law unless the Court grants the injunctive and other relief the Commission seeks.  To prevent the dissipation of investor funds, the Commission also separately seeks emergency relief, including an asset freeze and the appointment of a Receiver.

## II. DEFENDANTS AND RELIEF DEFENDANTS

### A.  Defendants

9.  Founding Partners is a Florida corporation with its principal place of business in Naples, Florida.  Founding Partners is registered with the Commission as an investment adviser. In December 2007, Founding Partners consented to the entry of a Commission order censuring it and ordering it to cease and desist from committing or causing any violations of Section 17(a)(2)

3

of the Securities Act. *In the Matter of Founding Partners Capital Management Co. and William Gunlicks*, Administrative Proceeding File No. 3-12896.

10. Gunlicks, 66, is the president, CEO, and sole shareholder of Founding Partners, and as such is the primary beneficiary of Founding Partners' management fees. In the same administrative proceeding, Gunlicks consented to the entry of a Commission order requiring him to cease and desist from committing or causing any violations of Section 17(a)(2) of the Securities Act of 1933.

## B. Relief Defendants

11. Sun Capital, Inc. is a Florida corporation with its principal place of business in Boca Raton, Florida. Sun Capital provides accounts receivable funding for commercial companies with loans from Stable-Value. Sun Capital is not registered with the Commission.

12. Sun Capital Healthcare, Inc. is a Florida corporation with its principal place of business in Boca Raton, Florida. Sun Capital Healthcare is in the business of purchasing accounts receivable from healthcare providers with loans from Stable-Value. Sun Capital Healthcare is not registered with the Commission.

13. Founding Partners Stable-Value Fund, LP is a Delaware limited liability partnership with its principal place of business in Naples, Florida. Founding Partners is the general partner of Stable-Value. As noted, Stable-Value loans investor funds to Sun Capital and Sun Capital Healthcare for the purchase of commercial and healthcare receivables. Stable-Value and its securities are not registered with the Commission.

14. Founding Partners Stable-Value Fund II, LP ("Stable-Value II") is a Delaware limited liability partnership with its principal place of business in Naples, Florida. Founding Partners is the general partner of Stable-Value II. Stable-Value II's portfolio was entirely

4

invested in Stable-Value as of December 2008. Stable-Value II and its securities are not registered with the Commission.

15. Founding Partners Global Fund, Ltd. ("Global Fund") is a Cayman company registered as a mutual fund in the Cayman Islands. Founding Partners is Global Fund's investment manger. As of December 2008, approximately 84% of Global Fund's portfolio was invested in Stable-Value. Global Fund and its securities are not registered with the Commission.

16. Founding Partners Hybrid-Value Fund, LP, f/k/a Founding Partners Equity Fund, LP ("Hybrid-Value Fund"), is a Delaware limited partnership with its principal place of business in Naples, Florida. Founding Partners is Hybrid-Value Fund's general partner. Hybrid-Value Fund's investment strategy consists of investing its assets in diversified equities and fixed-income structured financial portfolio programs. Approximately 21% of Hybrid-Value Fund's portfolio was invested in Stable-Value as of December 2008. Hybrid-Value Fund and its securities are not registered with the Commission.

### III. JURISDICTION AND VENUE

17. The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act, 15 U.S.C. §§ 77t, 77t(d), and 77v(a); Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e), and 78aa; and Section 214 of the Advisers Act, 15 U.S.C. § 80b-14.

18. This Court has personal jurisdiction over the Defendants and venue is proper in the Middle District of Florida because the Defendants' acts and transactions constituting the violations of the Securities Act, the Exchange Act, and the Advisers Act occurred in the Middle District of Florida. In addition, Founding Partners' principal offices are located in the Middle District of Florida and Gunlicks resides in the Middle District of Florida. Furthermore, the Sun

5

Capital entities conducted extensive business with Founding Partners and its funds as described in this Complaint.

19.     The Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails, in connection with the acts, practices, and courses of business set forth in this Complaint.

## IV.  FACTUAL ALLEGATIONS

### A.     Sun Capital's Factoring Of Receivables

20.     Since 2001, Founding Partners has made loans to Sun Capital through its Stable-Value fund to finance Sun Capital's discounted purchase of receivables.  These loans are the primary focus of Stable-Value's investment program and represent 99% of its portfolio. Founding Partners' three other funds, Stable-Value II, Global Fund, and Hybrid-Value Fund, were invested in part or in whole in Stable-Value.

21.     Pursuant to the written loan agreements between Stable-Value and Sun Capital, Sun Capital could use the loan proceeds to purchase healthcare and commercial receivables, although it has focused almost exclusively on purchasing healthcare receivables.  Under the agreements, Sun Capital could draw on the loans to purchase the receivables, and then repay the loans after collecting the receivables from the payors.  Sun Capital charged its factoring clients a fee of approximately 3% per month until it collected the receivables, and paid Stable-Value interest of approximately 1.3% per month.  After receiving the monthly interest payments from Sun Capital, Stable-Value then re-loaned the money to Sun Capital.

22.     Founding Partners charged Stable-Value a 1.75% annualized management fee on the total loan balance.  Stable-Value investors did not receive any automatic distributions from

6

the fund. According to fund documents, however, redemptions were available on a quarterly basis if requested in writing with at least sixty days notice.

## B.      Safety Of The Stable-Value Investment

23.      The cornerstone of Founding Partners' presentation of the Stable-Value investment opportunity was the safety of the loans to Sun Capital. Stable-Value's offering materials stated the loans were secured by healthcare receivables that "are the payment obligations of Federal and State government agencies, and certain U.S. insurance companies rated by various rating firms." Founding Partners's performance reports represented that as of January 2007, approximately 93% of the healthcare receivable payors were rated Aa or above by rating firms such as Moody's, Standard & Poor's, and A.M. Best. Founding Partners' monthly performance reports reassured investors that "the loans are secured by the healthcare receivables." Gunlicks represented to investors that the loans were collateralized according to strict criteria such that the underlying receivables would only be "investment grade." Moreover, Gunlicks explained to investors that the loan agreements provided that all of Sun Capital's assets, including the receivables, collateralized the loan balance and any accrued interest.

24.      Founding Partners and Gunlicks also represented to investors that the collateral would consist only of short-term receivables. For example, Gunlicks told investors that no receivable in the collateral base would be older than 150 days, and that any receivables reaching that age would be replaced with receivables less than 150 days old or covered directly by other funds received.

## C.      An Undisclosed Change In Strategy

25.      Beginning in 2004, Sun Capital began to invest in receivables of a materially different character than what Founding Partners had represented to investors. At first, Sun

7

Capital began purchasing workers-compensation receivables, which carried more risk because they were based on un-adjudicated workers-compensation claims. These receivables also took an average of almost three years to collect, creating greater liquidity risks for Sun Capital and, in turn, for Stable-Value investors seeking to redeem their interests. These receivables also did not present the option for Sun Capital to return any uncollectible amounts because Sun Capital purchased them in bulk at a discount. For instance, Sun Capital purchased some workers-compensation receivables for $11.5 million that had a face value of $23 million. Sun Capital's financial statements show that as of February 2009, it held approximately $53 million of workers-compensation receivables.

26.     Later in 2004, Sun Capital began purchasing a risky type of healthcare receivable called "Disproportionate Share" receivables (commonly referred to in the industry as "DSH" receivables). DSH receivables are a special type of Medicare and Medicaid receivable the government pays in two parts to healthcare providers in poor or underserved areas. The government makes the first payment at the normal reimbursement rate and in the normal collection period. The second payment is an amount in excess of the normal rate, which the government pays on average two years after the date of service, and only if the provider is still operating.

27.     DSH receivables are thus considerably riskier than standard healthcare receivables. They add significant liquidity risks due to their collection delays. More importantly, they add a "going concern" risk that ties their collectability to the provider's ability to continue to operate successfully.

8

28.     Although Sun Capital first purchased DSH receivables in 2004, these purchases escalated in 2008 to 84% more than the prior year.  As of February 2009, Sun Capital held approximately $158 million in DSH receivables.

29.     In 2004, Sun Capital's principals, through two separate corporations, began purchasing distressed hospitals.  Sun Capital subsequently began using Stable-Value funds to provide working capital loans to these hospitals.  In particular, Sun Capital drew on the Stable-Value loans to make advances to these hospitals to support their operations.  As of February 2009, Sun Capital had approximately $63 million in these related-party loans using funds received from Stable-Value.

## D.     Gunlicks Agreed To The Strategy Change

30.     Gunlicks would not allow Sun Capital to repay any principal on the loans because he wanted to maintain a stable return for his investors by having Stable-Value's assets fully invested in loans to Sun Capital.  As a result, in 2004, Sun Capital, forced to look beyond the typical health care receivable for additional investment opportunities, discussed with Gunlicks the possibility of purchasing workers-compensation and DSH receivables.  Gunlicks approved the purchases and, among other things, waived the requirement in the loan agreement that Sun Capital purchase healthcare receivables with 150-day collection periods.  Gunlicks also approved using Stable-Value borrowings to help Sun Capital's principals operate the hospitals.

## E.     Sun Capital Ceases Its Factoring Operations

31.     Subsequently, the arrangement between Stable-Value and Sun Capital changed significantly.  In the fall of 2008, Founding Partners received a flood of redemption requests for Stable-Value, which totaled approximately $382 million (or 70% of the fund assets) by year end.  Founding Partners faced severe liquidity problems and could not satisfy the redemptions.  As a

9

result, in October 2008, Founding Partners instructed Sun Capital not to take on any new factoring clients, and later added it would not allow Sun Capital to borrow further to support existing factoring clients.

32. In November 2008, Sun Capital told Gunlicks it was exiting the factoring business. Sun Capital indicated it planned to solely focus on the operation of the hospitals. Sun Capital's principals and Gunlicks discussed a future plan to raise capital to repay all Sun Capital borrowings from Stable-Value. At that time, Sun Capital's principals told Gunlicks they needed $8-12 million in working capital from Stable-Value to keep the hospitals operating and protect $120 million in DSH receivables. Subsequently, Founding Partners provided Sun Capital with approximately $24 million in additional investor funds and reinvested monthly interest payments from Sun Capital.

## V. MISREPRESENTATIONS AND OMISSIONS

### A. Misrepresentations Regarding The Loans To Sun Capital

33. Gunlicks and Founding Partners represented to investors orally and in offering materials, monthly reports, and audited financials that the Stable-Value investment opportunity was an investment in loans to Sun Capital that were fully secured by healthcare receivables. They also represented Sun Capital would collect these receivables in less than 150 days or have them replaced with new receivables or covered by other funding.

34. The fund documents, offering materials, and financial statements for Stable-Value did not disclose that Sun Capital invested in workers-compensation or DSH receivables, or these receivables' longer collection periods and materially increased collection risk.

35. Furthermore, Gunlicks did not tell Stable-Value and Stable-Value II investors that the collateral for their investments included workers-compensation or DSH receivables or that

10

these types of receivables took longer to collect and, in the case of the DSH receivables, had additional inherent "going concern" risks.

36.    Founding Partners' monthly performance reports also failed to disclose Sun Capital's investment in these alternative receivables or that they represented a significant portion of the collateral behind Stable-Value's loan.  For instance, as of February 2009, the collateral portfolio was 55% comprised of these riskier, less liquid receivables, yet the monthly performance reports noted only that the loans were secured by healthcare receivables.

37.    Founding Partners and Gunlicks also misled investors with monthly performance reports showing eight years of stable monthly returns of approximately 1.08% based on loans to Sun Capital that health care receivables purportedly secured.  They did not disclose that since no later than January 2008, the total amount of receivables (traditional 150-day receivables, workers-compensation receivables, and DSH receivables) has been less than the balance of the loans to Sun Capital.  For example, as of February 28, 2009, approximately $63 million of the collateral was comprised of loans by Sun Capital to related parties and a $450,000 loan to Sun Capital's CFO for the purchase of a house.

38.    Founding Partners did not disclose that since at least early November 2008, Sun Capital has been borrowing from Stable-Value to make working capital advances to factoring clients to protect the DSH receivables securing a portion of the Stable-Value loan.

39.    Moreover, despite the representations to investors regarding the receivables not aging beyond 150 days, Gunlicks effectively allowed a substantial increase in the aging of the collateral.  Sun Capital's collateral report for December 31, 2008, indicates that approximately $136 million of Sun Capital's receivables, including workers-compensation and DSH, have been outstanding for more than 150 days.  Furthermore, Sun Capital had approximately $40 million in

11

additional workers compensation and DSH receivables less than 120 days old, most of which by their very nature Sun Capital is not likely to collect within 150 days. The age of these receivables directly contradicted Founding Partners and Gunlicks' representations to investors regarding the collateral securing the loan and the disclosures found in the most recent audited financial statements.

**B.    Recent Misrepresentation Of The Investment Opportunity**

40.    Despite knowing since at least early November 2008, that Sun Capital was exiting the factoring business, Gunlicks continued to solicit unwitting investors into Stable-Value through at least January 2009 based on the premise that Sun Capital was still using funds to factor receivables.

41.    In January 2009, Gunlicks raised $5 million for Stable-Value from the Archdiocese of New Orleans without disclosing that Sun Capital was exiting the factoring business. Gunlicks instead represented to the Archdiocese that Sun Capital was purchasing healthcare receivables.

42.    Gunlicks also did not inform the Archdiocese prior to its investment that Stable-Value was facing significant redemption requests. Gunlicks merely represented that Stable-Value had two unsatisfied redemption requests totaling $11 million as a result of the decline in the markets when, in fact, Stable-Value was facing $358 million in redemption requests.

43.    Furthermore, Gunlicks and Founding Partners failed to disclose to the Archdiocese that they had suspended redemptions in Stable-Value altogether.

**C.    Misrepresentation Of Having Audited Financials**

44.    Founding Partners and Gunlicks falsely represented to investors that their funds had available 2007 audited financial statements. Stable-Value and Stable-Value II's offering

12

materials stated investors would receive audited financial statements within 120 days of the close of the calendar year. Gunlicks made this same promise in letters he sent to new investors throughout 2008. Stable-Value and Stable-Value II did not have audited financial statements for 2007. In fact, the Defendants fired the auditors in February 2009 after the auditors were prevented from expanding the audit of the healthcare receivables because Sun Capital would not provide the necessary documentation.

45.    Founding Partners also sent all investors monthly performance reports throughout 2008 indicating audited financials were available upon request.

D.    **Failure To Disclose Prior Commission Action**

46.    Founding Partners and Gunlicks failed to disclose to investors that in December 2007, the Commission entered an order against them finding that Founding Partners caused Stable-Value to pay an undisclosed fee to a related entity, and caused several of its funds to engage in transactions inconsistent with their offering memoranda. *In the Matter of Founding Partners Capital Management Company and William Gunlicks* (Securities Act Rel. No. 8866, Advisers Act Rel. No. 2680, Dec. 3, 2007) (the "Order"). The Commission charged Founding Partners with willfully violating Section 17(a)(2) of the Securities Act and charged Gunlicks with causing these violations. Stable-Value's offering materials touted Gunlicks' business acumen and experience, but failed to disclose the Order.

47.    In addition, the Commission's Order required Founding Partners to provide a copy of the Order to all of its current and prospective clients as well as any investors and any potential investors for one year, which it did not do.

13

### E.    Misuse Of Investor Funds

48.    Founding Partners and Gunlicks improperly used fund assets to pay personnel expenses.  In 2008, Founding Partners' CFO received approximately $200,000 in payments from Stable-Value, Stable-Value II, and Hybrid-Value Fund.  These payments were contrary to the funds' written representations that the general partners would bear the general administrative and personnel costs of the funds.  For example, the Stable-Value limited partnership agreement states, "The Partnership shall not pay directly or reimburse the General Partner for its operation and overhead expenses, including employee salaries, . . .administrative services and secretarial, clerical and other personnel."  The Stable-Value offering materials stated that Founding Partners "will bear the administrative expenses of the Partnership" and provide "administrative services, and secretarial, clerical and other personnel."

## VI. CLAIMS FOR RELIEF

## COUNT I

## FRAUD IN VIOLATION OF
## SECTIONS 17(a)(1) OF THE SECURITIES ACT

49.    The Commission repeats and realleges Paragraphs 1 through 48 of this Complaint as if fully set forth herein.

50.    From at least August 2004 through March 2009, Founding Partners and Gunlicks, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, knowingly, willfully or recklessly employed devices, schemes or artifices to defraud.

51.    By reason of the foregoing, Founding Partners and Gunlicks, have violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

14

## COUNT II

### FRAUD IN VIOLATION OF
### SECTIONS 17(a)(2) AND 17(a)(3) OF THE SECURITIES ACT

52.    The Commission repeats and realleges Paragraphs 1 through 48 of this Complaint as if fully set forth herein.

53.    From at least August 2004 through March 2009, Founding Partners and Gunlicks, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities: (a) obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (b) engaged in transactions, practices and courses of business which have operated as a fraud or deceit upon purchasers of such securities.

54.    By reason of the foregoing, Founding Partners and Gunlicks, directly and indirectly, violated and, unless enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77(q)(a)(2) and 77(q)(a)(3).

## COUNT III

### FRAUD IN VIOLATION OF SECTION 10(b) OF THE
### EXCHANGE ACT AND RULE 10b-5 THEREUNDER

55.    The Commission repeats and realleges paragraphs 1 through 48 of this Complaint as if fully set forth herein.

56.    From at least August 2004 through March 2009, Founding Partners and Gunlicks, directly and indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of securities, knowingly, willfully or recklessly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material

15

facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices and courses of business which have operated, and will continue to operate as a fraud upon the purchasers of such securities.

57.    By reason of the foregoing, Founding Partners and Gunlicks, directly and indirectly, violated and, unless enjoined, will continue to violate Section 10(b) of the Securities Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, thereunder.

## COUNT IV

## FRAUD IN VIOLATION OF SECTIONS 206(1), 206(2), AND 206(4) OF THE ADVISERS ACT AND RULE 206(4)-8 THEREUNDER

58.    The Commission repeats and realleges paragraphs 1 through 48 of this Complaint as if fully set forth herein.

59.    From at least August 2004 through March 2009, Founding Partners and Gunlicks, by use of the mails, and the means and instrumentality of interstate commerce, directly or indirectly, knowingly, willfully or recklessly:  (a) employed devices, schemes or artifices to defraud clients or prospective clients; (b) engaged in transactions, practices and courses of business that operated as a fraud or deceit upon clients or prospective clients; and (c) engaged in acts, practices, or courses of business which were fraudulent, deceptive, or manipulative.

60.    Among other things, Founding Partners and Gunlicks made untrue statements of material facts and omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading, to any client or prospective client and otherwise engaged in acts, practices, and courses of business that were fraudulent, deceptive, or manipulative with respect to its clients or prospective clients.

16

61.     By reason of the foregoing, Founding Partners, directly and indirectly, violated and, unless enjoined, will continue to violate Sections 206(1), 206(2) and 206(4) of the Advisers Act and Rule 206(4)-8, 15 U.S.C. §§ 80b-6(1), (2), and (4), and Rule 206(4)-8 promulgated thereunder, 17 C.F.R. § 275.206(4)-8.

## COUNT V

## VIOLATION OF COMMISSION'S CEASE-AND-DESIST ORDER

62.     The Commission repeats and realleges paragraphs 1 through 48 of this Complaint as if fully set forth herein.

63.     From at least January 2008 through March 2009, in violation of a Commission administrative order, Founding Partners and Gunlicks, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities, obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, in violation of Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

64.     Founding Partners and Gunlicks also failed to provide a copy of the Commission's December 3, 2007 Administrative Order to all of Founding Partners' current and prospective clients as well as any investors and any potential investors for one year.

65.     By reason of the foregoing, Founding Partners and Gunlicks violated the terms of a Commission Administrative Order.

17

**RELIEF REQUESTED**

**WHEREFORE,** the Commission respectfully requests that the Court:

## I. Declaratory Relief

Declare, determine and find that Founding Partners and Gunlicks committed the violations of the federal securities laws alleged in this Complaint.

## II. Permanent Injunctive Relief

Issue a Permanent Injunction restraining and enjoining Founding Partners and Gunlicks from violating: (i) Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a); (ii) Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77(q)(a)(2) and 77(q)(a)(3); (iii) Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5; (iv) Sections 206(1), 206(2), and 206(4) of the Advisers Act, 15 U.S.C. §§ 80b-6(1), (2), and (4) and Rule 206(4)-8 promulgated thereunder, 17 C.F.R. § 275.206(4)-8; and (v) the December 3, 2007 Commission administrative Order requiring Founding Partners and Gunlicks to cease and desist from committing or causing any violations of Section 17(a)(2).

## III. Disgorgement

Issue an Order requiring Founding Partners, Gunlicks, and the Relief Defendants to disgorge all ill-gotten profits or proceeds they received as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest.

## IV. Penalties

Issue an Order directing Founding Partners and Gunlicks to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d); Section 21(d) of the Exchange Act, 15 U.S.C. § 78(d)(3); and Section 209(e) of the Advisers Act, 15 U.S.C. § 80b-9.

18

## V.  Order Pursuant to Section 20(c) of the Securities Act

Issue an Order pursuant to Section 20(c) of the Securities Act requiring Founding Partners and Gunlicks to comply with the December 3, 2007 Commission Administrative Order requiring Founding Partners to cease and desist from committing or causing any violations and future violations of Section 17(a)(2) of the Securities Act.

## VI. Further Relief

Grant such other and further relief as may be necessary and appropriate.

## VII. Retention of Jurisdiction

Further, the Commission respectfully requests the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Respectfully submitted,

April 20, 2009                    By:    _____

C. Ian Anderson
Senior Trial Counsel
New York Reg. No. 2693067
Direct Dial:  (305) 982-6317
E-mail: andersonci@sec.gov
*Lead Counsel*

Attorney for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile:  (305) 536-4154

19

FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.:

09 APR 20 PM 4: 06

2: 09-cV-229-FtM-29 SPC

SECURITIES AND EXCHANGE COMMISSION,          )
                                             )
          Plaintiff,                         )
                                             )
v.                                           )
                                             )
FOUNDING PARTNERS CAPITAL MANAGEMENT, CO.,   )
and WILLIAM L. GUNLICKS,                      )
                                             )
          Defendants,                        )
                                             )
SUN CAPITAL, INC.,                           )
SUN CAPITAL HEALTHCARE, INC.,                )
FOUNDING PARTNERS STABLE-VALUE FUND, LP,     )
FOUNDING PARTNERS STABLE-VALUE FUND II, LP,  )
FOUNDING PARNTERS GLOBAL FUND, LTD, and      )
FOUNDING PARTNERS HYBRID-VALUE FUND, LP,     )
                                             )
          Relief Defendants.                 )
_____)

## ORDER APPOINTING RECEIVER

WHEREAS, Plaintiff Securities and Exchange Commission has filed an emergency motion

for the appointment of a Receiver over Defendant Founding Partners Capital Management, Co.

("Founding Partners") and Relief Defendants Founding Partners Stable-Value Fund, LP,

Founding Partners Stable-Value Fund II, LP, Founding Partners Global Fund Ltd., and Founding

Partners Hybrid-Value Fund, LP ("Relief Defendants") with full and exclusive power, duty and

authority to: administer and manage the business affairs, funds, assets, choses in action and any

other property of Founding Partners and the Relief Defendants; marshal and safeguard all of the

assets of Founding Partners and the Relief Defendants; and take whatever actions are necessary for

the protection of investors;

**WHEREAS**, the Commission has made a sufficient and proper showing in support of the relief requested by evidence demonstrating a *prima facie* case of violations of the federal securities laws by Founding Partners and Defendant William Gunlicks;

**WHEREAS**, the Commission has submitted the credentials of a candidate to be appointed as Receiver of all of the assets, properties, books and records, and other items of Founding Partners and the Relief Defendants, including any properties, assets and other items held in the name of Founding Partners and the Relief Defendants, and the Commission has advised the Court that this candidate is prepared to assume this responsibility if so ordered by the Court;

**NOW, THEREFORE, IT IS ORDERED AND ADJUDGED** that _Leyza Blanco, Esq._ is hereby appointed the Receiver over Founding Partners and each of the Relief Defendants, and each of their subsidiaries, successors and assigns, and is hereby authorized, empowered, and directed to:

1.     Take immediate possession of all property, assets and estates of every kind of Founding Partners and each of the Relief Defendants, whatsoever and wheresoever located, including but not limited to all offices maintained by Founding Partners and the Relief Defendants, rights of action, books, papers, data processing records, evidences of debt, bank accounts, savings accounts, certificates of deposit, stocks, bonds, debentures and other securities, mortgages, furniture, fixtures, office supplies and equipment, and all real property of Founding Partners and the Relief Defendants wherever situated, and to administer such assets as is required in order to comply with the directions contained in this Order, and to hold all other assets pending further order of this Court;

2.     Investigate the manner in which the affairs of Founding Partners and the Relief Defendants were conducted and institute such actions and legal proceedings, for the benefit and on

2

behalf of Founding Partners or the Relief Defendants and their investors and other creditors as the Receiver deems necessary against those individuals, corporations, partnerships, associations and/or unincorporated organizations which the Receiver may claim have wrongfully, illegally or otherwise improperly misappropriated or transferred money or other proceeds directly or indirectly traceable from investors in Founding Partners and the Relief Defendants, including against Founding Partners and the Relief Defendants, their officers, directors, employees, affiliates, subsidiaries, or any persons acting in concert or participation with them, or against any transfers of money or other proceeds directly or indirectly traceable from investors in Founding Partners and the Relief Defendants; provided such actions may include, but not be limited to, seeking imposition of constructive trusts, disgorgement of profits, recovery and/or avoidance of fraudulent transfers under Florida Statute § 726.101, et. seq. or otherwise, rescission and restitution, the collection of debts, and such orders from this Court as may be necessary to enforce this Order;

3.  Present to this Court a report reflecting the existence and value of the assets of Founding Partners and the Relief Defendants and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of Founding Partners and the Relief Defendants;

4.  Appoint one or more special agents, employ legal counsel, actuaries, accountants, clerks, consultants and assistants as the Receiver deems necessary and to fix and pay their reasonable compensation and reasonable expenses, as well as all reasonable expenses of taking possession of the assets and business of Founding Partners and the Relief Defendants, and exercising the power granted by this Order, subject to approval by this Court at the time the Receiver accounts to the Court for such expenditures and compensation;

5.      Engage persons in the Receiver's discretion to assist the Receiver in carrying out the Receiver's duties and responsibilities, including, but not limited to, the United States Marshal's Service or a private security firm;

6.      Defend, compromise or settle legal actions, including the instant proceeding, in which Founding Partners, any of the Relief Defendants, or the Receiver are a party, commenced either prior to or subsequent to this Order, with authorization of this Court; except, however, in actions where Founding Partners or the Relief Defendants are a nominal party, as in certain foreclosure actions where the action does not effect a claim against or adversely affect the assets of Founding Partners or the Relief Defendants, the Receiver may file appropriate pleadings at the Receiver's discretion.  The Receiver may waive any attorney-client or other privilege held by Founding Partners or the Relief Defendants;

7.      Assume control of, and be named as authorized signatory for, all accounts at any bank, brokerage firm or financial institution which has possession, custody or control of any assets or funds, wherever situated, of Founding Partners or the Relief Defendants and, upon, order of this Court, of any of their subsidiaries or affiliates, provided that the Receiver deems it necessary;

8.      Make or authorize such payments and disbursements from the funds and assets taken into control, or thereafter received by the Receiver, and incur, or authorize the incurrence of, such expenses and make, or authorize the making of, such agreements as may be reasonable, necessary, and advisable in discharging the Receiver's duties;

9.      Have access to and review all mail of Founding Partners and the Relief Defendants (except for mail that appears on its face to be purely personal or attorney-client privileged) received at any office or address of Founding Partners or any of the Relief Defendants.

**IT IS FURTHER ORDERED AND ADJUDGED** that, in connection with the appointment of the Receiver provided for above:

10. Founding Partners and each of the Relief Defendants, and all of their directors, officers, agents, employees, attorneys, attorneys-in-fact, shareholders, and other persons who are in custody, possession, or control of any assets, books, records, or other property of Founding Partners or the Relief Defendants shall deliver forthwith upon demand such property, money, books and records to the Receiver, and shall forthwith grant to the Receiver authorization to be a signatory as to all accounts at banks, brokerage firms or financial institutions which have possession, custody or control of any assets or funds in the name of or for the benefit of Founding Partners or the Relief Defendants;

11. All banks, brokerage firms, financial institutions, and other business entities which have possession, custody or control of any assets, funds or accounts in the name of, or for the benefit of, Founding Partners or the Relief Defendants shall cooperate expeditiously in the granting of control and authorization as a necessary signatory as to said assets and accounts to the Receiver;

12. Unless authorized by the Receiver, Founding Partners and the Relief Defendants, and their principals shall take no action, nor purport to take any action, in the name of or on behalf of Founding Partners or any of the Relief Defendants;

13. Founding Partners, the Relief Defendants, their principals, and their respective officers, agents, employees, attorneys, and attorneys-in-fact, shall cooperate with and assist the Receiver, including, if deemed necessary by the Receiver, appearing for deposition testimony upon two (2) business days notice (by facsimile), and producing documents upon two (2) business days notice, while the Commission's request for an asset freeze is pending. Founding Partners, the Relief Defendants, and their principals and respective officers, agents, employees, attorneys, and attorneys-

5

in-fact shall take no action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the Receiver in the conduct of the Receiver's duties or to interfere in any manner, directly or indirectly, with the custody, possession, management, or control by the Receiver of the funds, assets, premises, and choses in action described above;

14.    The Receiver, and any counsel whom the Receiver may select, are entitled to reasonable compensation from the assets now held by or in the possession or control of or which may be received by Founding Partners or the Relief Defendants; said amount or amounts of compensation shall be commensurate with their duties and obligations under the circumstances, subject to approval of the Court;

15.    During the period of this receivership, all persons, including creditors, banks, investors, or others, with actual notice of this Order, are enjoined from filing a petition for relief under the United States Bankruptcy Code without prior permission from this Court, or from in any way disturbing the assets or proceeds of the receivership or from prosecuting any actions or proceedings which involve the Receiver or which affect the property of Founding Partners or the Relief Defendants;

16.    Title to all property, real or personal, all contracts, rights of action and all books and records of Founding Partners and the Relief Defendants and their principals, wherever located within or without this state, is vested by operation of law in the Receiver;

17.    Upon request by the Receiver, any company providing telephone services to Founding Partners and any of the Relief Defendants shall provide a reference of calls from any number presently assigned to Founding Partners or any of the Relief Defendants to any such number designated by the Receiver or perform any other changes necessary to the conduct of the receivership;

6

18.     Any entity furnishing water, electric, telephone, sewage, garbage or trash removal services to Founding Partners or any of the Relief Defendants shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver;

19.     The United States Postal Service is directed to provide any information requested by the Receiver regarding Founding Partners or any of the Relief Defendants, and to handle future deliveries of the mail of Founding Partners and the Relief Defendants as directed by the Receiver;

20.     No bank, savings and loan association, other financial institution, or any other person or entity shall exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

21.     No bond shall be required in connection with the appointment of the Receiver. Except for an act of gross negligence or greater, the Receiver shall not be liable for any loss or damage incurred by Founding Partners and the Relief Defendants, or by the Receiver's officers, agents or employees, or any other person, by reason of any act performed or omitted to be performed by the Receiver in connection with the discharge of the Receiver's duties and responsibilities;

22.     Service of this Order shall be sufficient if made upon Founding Partners or the Relief Defendants and their principals by facsimile or overnight courier;

23.     In the event that the Receiver discovers that funds of persons who have invested in Founding Partners or the Relief Defendants have been transferred to other persons or entities, the Receiver shall apply to this Court for an Order giving the Receiver possession of such funds and, if the Receiver deems it advisable, extending this receivership over any person or entity holding such investor funds;

24.     Immediately upon entry of this Order, and while the Commission's motion for an asset freeze is pending, the Receiver may take depositions upon oral examination of parties and non-parties subject to two (2) business days notice. In addition, immediately upon entry of this Order, the Receiver shall be entitled to serve interrogatories, requests for the production of documents and requests for admissions. The parties shall respond to such discovery requests within two (2) business days of service. Service of discovery requests shall be sufficient if made upon the parties by facsimile or overnight courier. Depositions may be taken by telephone or other remote electronic means; and

25.     This Court shall retain jurisdiction of this matter for all purposes.

**DONE AND ORDERED** this 20th day of April, 2009, in Fort Myers, Florida.

_____
UNITED STATES DISTRICT JUDGE

Copies to:

C. Ian Anderson, Esq.
**Attorney for Plaintiff**
**Securities and Exchange Commission**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone:  (305) 982-6317
Facsimile:   (305) 536-4154

I certify the foregoing to be a true
and correct copy of the original.
SHERYL L. LOESCH, Clerk
United States District Court
Middle District of Florida

By: _____
Deputy Clerk

8